THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

|  |  |  |
|---|---|---|
| In re FEDEX GROUND PACKAGE SYSTEM, INC., EMPLOYMENT PRACTICES LITIGATION | ) ) ) ) | Cause No. 3:05-MD-527 RM (MDL-1700) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) ) ) ) ) ) | |

OPINION and ORDER

On September 6, 2006, Magistrate Judge Nuechterlein denied the defendants' motion to compel the production of the plaintiffs' tax returns and related financial information.[1] The matter is before the court on the defendants' objection to the Magistrate Judge's denial of their motion to compel, and for the reasons that follow, the court sustains their objection in part and grants the motion to compel in part.

The court reviews the Magistrate Judge's discovery-related decision under FED. R. CIV. P. 72(a) which provides, "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion

---

[1] The defendants seek the production of "[a]ll documents that you submitted to any tax authority, or that you used to support any portion of any submission to any tax authority, during the period you contracted with Defendants, including, but not limited to, complete copies of all federal and state tax returns, and all invoices, receipts, cancelled checks, correspondence or worksheets used to prepare your tax returns (Request No. 2)," "[a]ll documents relating to or reflecting any expenses that you have incurred in your capacity as a driver with Defendants (Request No. 14)," and "[a]ll documents sent to or received from you (sic) accountant or financial advisor relating to income or expenses associated with your relationship with Defendants (Request No. 18)."

of the magistrate judge's order found to be clearly erroneous or contrary to law." *See* Weeks v. Samsung Heavy Industries Co., Ltd., 126 F.3d 926, 943 (7th Cir. 1997); *see also* 28 U.S.C. § 636(b)(1)(A). This means that "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." Id.

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things." FED. R. CIV. P. 26(b)(1). For discovery purposes, the concept of relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Chavez v. DaimlerChrysler Corp., 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).

"Although there is a strong public policy in favor of disclosure of relevant materials, Rule 26(b)(2) of the Federal Rules of Civil Procedure empowers district courts to limit the scope of discovery if 'the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.' " Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002). In ruling on a motion to compel, "a district court should independently determine the proper course of discovery

based upon the arguments of the parties." Gile v. United Airlines, Inc., 95 F.3d 492, 496 (7th Cir. 1996).

The parties dispute the extent to which the court should apply a heightened standard to the discoverability of tax returns. The defendants say the magistrate judge incorrectly required them to demonstrate "a compelling need to obtain information." The court doesn't agree; the September 6 order doesn't require such a showing. The order states that tax returns generally are discoverable "where a litigant tenders an issue as to the amount of his income," but because such financial information has "some character of confidentiality [ ] [its] production is not routinely required … therefore, tax returns must be relevant and material to the matters in issue." See Shaver v. Yacht Outward Bound, 71 F.R.D. 561, 564 (N.D. Ill. 1976).

The magistrate judge's reading of Shaver v. Yacht Outward Bound is consistent with the court of appeals position on the discoverability of tax returns, so he stated the law correctly. See Poulos v. Naas Foods, Inc., 959 F.2d 69, 74-75 (7th Cir. 1992) (noting that several courts, including Shaver v. Yacht Outward Bound, have recognized a public policy against routine disclosure of tax records, but holding that a plaintiff who puts the level and sources of his income at issue can be compelled to produce such records). In applying this standard however, the magistrate judge didn't agree with the defendants that the tax returns were relevant to the matters at issue.

3

The parties agree the over-arching issue in this litigation is the classification of certain package delivery drivers as independent contractors rather than employees. Because the discovery process was bifurcated on the issues of liability and damages—and then expanded to include material regarding damages if the material was (1) related to class certification and (2) the party seeking discovery wasn't attempting to secure vast documentation—the plaintiffs' tax records must be relevant and material to either the defendants' potential liability or class certification. The magistrate judge determined that the plaintiffs' tax returns weren't sufficiently relevant to liability or class certification, and so the request was outside the scope of the limited discovery phase.

The defendants say the tax returns are relevant to liability because (1) each plaintiff's individual tax return is a virtual admission of his or her status as an independent contractor, (2) the plaintiffs' treatment for tax purposes is indicative of their independent contractor status, and (3) the tax returns as a whole provide a "snap shot" of the manner in which the plaintiffs ran their businesses.

The court agrees with the magistrate judge that each plaintiff's tax return doesn't amount to an "admission" that he or she is or was an independent contractor. A party's tax and benefit treatment can be a "virtual admission" by the hiring party as to the hired party's status, *see* Farlow v. Wachovia Bank of North Carolina, N.A., 259 F.3d 309, 315 (4th Cir. 2001), but where the hired party is provided with the tax form by their employer, the employee's subjective understanding as to his or her employment status isn't dispositive. *See, e.g.,*

4

Robicheaux v. Radcliff Material, Inc., 697 F.2d 662, 667 (5th Cir. 1983) ("An employee is not permitted to waive employee status," so "the fact that the plaintiff welders in this case signed contracts stating that they were independent contractors, while relevant, is not dispositive."); Usery v. Pilgrim Equipment Co., Inc.,527 F.2d 1308, 1315 (5th Cir. 1976); Baker v. Barnard Const. Co. Inc., 860 F. Supp. 766, 772 (D. N.M. 1994).

Yet a hired party's treatment for tax purposes can be a factor relevant in determining their employment status under the common law agency test applied in ERISA cases.[2] *See* Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 323 (1992) (determining employment status under the common law agency test for purposes of an ERISA claim); Mazzei v. Rock N Around Trucking, Inc., 246 F.3d 956, 964-965 (7th Cir. 2001); E.E.O.C. v. North Knox School Corp., 154 F.3d 744, 750 (7th Cir. 1998). Courts that have considered a party's tax treatment have considered whether the party filed a form 1099 or form W-2. *See* Mazzei v. Rock N Around Trucking 246 F.3d at 964-965; E.E.O.C. v. North Knox School Corp., 154 F.3d at 750. The plaintiffs admit they filed their tax returns as "self-employed," so they contend that any additional information contained in the tax returns is irrelevant. The magistrate judge agreed stating, "this Court fails to see what other information may be gleaned from the tax returns that reflects whether Plaintiffs were employees." This court agrees that any additional information

---

[2] The plaintiffs in this MDL are potential claimants in the putative nationwide ERISA class set for in the Third Amended Class Complaint in Craig, et al., FedEx Ground Package Systems, Inc., et al., document number 299, ¶ 51.

contained in the tax returns isn't material in determining the plaintiffs' employment status for purposes of their ERISA claims since the additional information contained in the tax returns hasn't been put at issue under the common law agency test.

Still, several complaints in this case allege violations of the Fair Labor Standards Act and the Family and Medical Leave Act, so the court will also likely consider the economic reality of the parties' relationship to determine whether the plaintiffs were or are employees. Secretary of Labor, U.S. Dept. of Labor v. Lauritzen, 835 F.2d 1529, 1534 (7th Cir. 1987) (determining employment status under the economic realities test for purpose of a FLSA claim); Watson v. Drummond Co., Inc., 436 F.3d 1310, 1316 (11th Cir. 2006) ("Given the substantial similarity between the definitions of 'employer' in the EPPA and in the FMLA and the FLSA, we find the economic reality test appropriate here as well."); Nichols v. All Points Transport Corp. of Michigan, Inc., 364 F. Supp.2d 621, 630 (E.D. Mich. 2005) (the court found that "the FMLA incorporates, by reference, the definition of 'employee' found in the FLSA," and so it applied the "economic realities test" for determining whether workers are "employees" covered by FMLA).[3] The Magistrate Judge found that the "profits, income, and expenses . . . have little bearing on the liability issue of whether Plaintiffs were employees." To extent the

---

[3] The defendants also argue that the court will utilize the economic realities test to determine if the plaintiffs are employees for purposes of claims under the Americans with Disabilities Act. Because the Perry complaint also alleges a claim under FMLA, the court declines to determine at this time which test should be applied to a claim under the ADA.

Magistrate Judge found that the information contained in the tax returns wasn't relevant to determining the economic reality of the plaintiffs' working relationship with FedEx, the court parts with the magistrate judge on this point.[4]

Courts consider six factors under the economic realities test in determining whether the hired party is economically dependent upon the business to which he or she renders service or is in business for him or herself. Secretary of Labor, U.S. Dept. of Labor v. Lauritzen, 835 F.2d at 1534.[5] The defendants say the information contained in the plaintiffs' tax returns is relevant to showing the second prong: the plaintiffs' "opportunity for profit or loss depending upon his [or her] managerial skill." Id. They argue the "wide range in profits or losses among the Plaintiffs," which can be gleaned from the tax returns, shows the plaintiffs had the opportunity to maximize their profits through controlling costs and the use of their own initiative and judgment.[6] The court agrees.

---

[4] *See* Secretary of Labor, U.S. Dept. of Labor v. Lauritzen, 835 F.2d 1529, 1534, 1539-1540 (7th Cir. 1987)(Easterbrook, J., concurring) for the difference between the common law agency test, and the economic realities test applied in remedial legislation such as the FLSA.

[5] "Among the criteria courts have considered are the following six: (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; (6) the extent to which the service rendered is an integral part of the alleged employer's business." Id.

[6] They say the information will show: (1) the structure of the plaintiffs' businesses, (2) the nature and amount of business expenses incurred, (3) the extent to which the business employed workers, (4) the degree of independence and entrepreneurial discretion exercised, (5) the extent to which the plaintiffs took advantage of tax benefits available exclusive to business and not to employees, and (6) other sources of income.

Under the "opportunity for profit or loss" prong, the court looks at whether the plaintiffs have control over the essential determinants of profits in a business or have direct share in the success of the business; whether their earnings depend upon their judgment or initiative, or on the hiring party's need for their work. Dole v. Snell, 875 F.2d 802, 810 (10th Cir. 1989). The plaintiffs say the information in their tax returns is irrelevant because it will at most demonstrate their opportunity to maximize profits by controlling cost, a factor which isn't relevant in analyzing the economic realities of the parties' relationship. *See* Baker v. Flint Engineering & Const. Co., 137 F.3d 1436, 1444 (10th Cir. 1998). The court doesn't agree.

Our court of appeals hasn't addressed the relevance of a hired party's ability to maximize profits by controlling costs under the "opportunity for profit or loss" prong, but at least two other circuits have. The Fifth Circuit considers such information relevant because the focus under this prong is twofold: the court looks at the hiring party's ability to dictate the hired party's opportunity for profit or loss, as well as the hired party's ability to control profit or loss based on his or her skill, initiative, ability to cut costs, and understanding of the relevant industry. *See* Herman v. Express Sixty-Minutes Delivery Service, Inc., 161 F.3d 299, 304 (5th Cir. 1998). The Tenth Circuit has rejected this position, finding the type of "profit" associated with independent contractors isn't determined by the hired party's ability to control cost or find work with other companies, but is limited to the extent of their ability to render services in an independent

8

fashion—in the context of rig welders, this includes their ability to bid on projects at a flat rate, set their own hours or schedule, and complete projects as they see fit. Baker v. Flint Engineering & Const. Co., 137 F.3d at 1441–1444.

Economic dependence is the touchstone in determining economic reality, but "all the circumstances of the work activity" should be considered to determine "the nature of the working relationship . . .." Secretary of Labor, U.S. Dept. of Labor v. Lauritzen, 835 F.2d at 1534; *see also* Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988) ("The factors that have been identified by various courts in applying the economic reality test are not exclusive. Since the test concerns the totality of the circumstances, any relevant evidence may be considered, and mechanical application of the test is to be avoided."). In the context of running a business, profit is the gain realized from that enterprise over and above its expenditures. Brock v. Lauritzen, 624 F. Supp. 966, 968 (E.D. Wis. 1985); *see also* BLACK'S LAW DICTIONARY 1246 (8th ed. 2004) (profit is defined as "[t]he excess of revenues over expenditures in a business transaction"). A plaintiff's ability to limit certain expenditures efficiently for purpose of realizing a profit can be part of the "managerial skill" associated with a person in business for him or herself. *See, e.g.,* Secretary of Labor, U.S. Dept. of Labor v. Lauritzen, 835 F.2d at 1540 (Easterbrook, J., concurring). But the ability to increase income by controlling cost can also hold true for every worker, whether independent contractor or employee. *See, e.g.,* Baker v. Barnard Const. Co. Inc., 860 F. Supp.

9

at 773-774 (noting that a mechanic that takes good care of his tools will have more money in his pocket than a careless worker).

A court ultimately must decide whether the divergence in profits as exhibited by the tax returns is the result of activities typical of a person running their own business or by activities that can be associated with all workers. *See* Dole v. Snell, 875 F.2d at 809-810; Baker v. Barnard Const. Co. Inc., 860 F. Supp. at 773-774; Nichols v. All Points Transport Corp. of Michigan, Inc., 364 F. Supp.2d 621, 633 (E.D. Mich. 2005). To the extent the plaintiffs' tax returns can show some plaintiffs were able to maximize profits by controlling costs via workers and subcontractors, or by utilizing business-associated tax benefits, or through other sources of income, this financial information can be relevant for showing the plaintiffs' earnings didn't necessarily depend on the defendants, but upon their individual business judgment and initiative. *See* Herman v. Express Sixty-Minutes, 161 F.3d at 304. It is unclear at this point the source behind the divergent earnings, but by claiming to be an employee under the FLSA and the FMLA, the plaintiffs have their income at issue, and because the parties dispute the nature of their business relationship, the court finds the information contained in the plaintiffs' tax returns to be both relevant and material to the issues in this case. *See, e.g.,* Poulos v. Naas Foods, Inc., 959 F.2d at 75 (district court didn't abuse its discretion by compelling the production of the plaintiff's tax returns where he put the sources and amount of his income at issue by claiming to be a dealer under the Wisconsin Fair Dealership Law).

The defendants also say the plaintiffs' tax returns are relevant to class certification. To maintain a class action, the named plaintiffs must demonstrate that they, and each class they wish to represent, meet the requirements of FED. R. CIV. P. 23. First, the proposed class action must satisfy all four elements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Second, the action must be maintainable under at least one of the three provisions under Rule 23(b).

The defendants contend the information contained in the plaintiffs' tax returns is relevant to the factors enumerated in FED. R. CIV. P. 23(a). The magistrate judge denied the production of the tax returns, finding this information had little bearing on the Rule 23(a) elements and therefore didn't warrant a vast discovery request at this stage of the bifurcated discovery process. The court agrees.

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 597 (7th Cir. 1993). The course of conduct that gives rise to the plaintiffs' claims in this MDL is the classification of certain package delivery drivers as independent contractors rather than employees. As previously discussed, the information in some of the plaintiffs' tax returns is material to demonstrating employee status, but this information is primarily related to calculation of damages. It doesn't impact the commonality of essential

11

characteristics that gives rise to the plaintiffs' claims and therefore isn't relevant to typicality. *See* Id. (It is only necessary for the claim of the class representative and the claims of the class at large to have the "same essential characteristics;" there may still be differences). The court agrees with the magistrate judge that the information in the tax returns isn't relevant to the class certification to warrant such a discovery request at this stage.

The "adequacy of representation is composed of two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d at 598 (quoting Secretary of Labor v. Fitzsimmons, 805 F.2d 682, 697 (7th Cir. 1986)). "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." Id. (quoting Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992)). The magistrate judge determined that this material wasn't relevant to determining whether the class members have conflicting claims, and the defendants haven't pointed to anything that suggests this conclusion is clearly erroneous or contrary to law.

The defendants also contend the information in the tax returns will show the determination of damages will be highly individualized and therefore demonstrative of the unmanageability of the putative classes under FED. R. CIV. P. 23(b). The court doesn't agree. While this information may be relevant for demonstrating individual issues in calculating the damages suffered, "it has been

commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." *See, e.g.,* Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 137 (3rd Cir. 2000) (although denying class certification because of the individual issues as to liability).  Again, the operative facts common to all members of the proposed class as a result the defendants' conduct and the significant legal issues that are common to the proposed class members predominate this litigation. The varying incomes and expenses of the drivers shed light on the issue of liability, but only on the very specific and narrow question of employee status for some plaintiffs. The magistrate judge determined the information in the plaintiffs' tax returns related primarily to the calculation of damages and therefore wasn't discoverable at this stage. The court finds nothing in this conclusion clearly erroneous or contrary to law.

For the foregoing reasons, the defendants' objection to the Magistrate Judge's ruling [Doc. No. 369] is SUSTAINED IN PART and the defendants' motion to compel [Doc. No. 306] is GRANTED IN PART. It is granted insofar as those plaintiffs that allege claims under the FLSA or the FMLA are compelled to the produce their tax returns and other related financial information.

SO ORDERED.

Entered:   December 14, 2006

/s/ Robert L. Miller, Jr.

                Chief Judge
                United States District Court