UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ———————————————— )<br>In re FEDEX GROUND PACKAGE )<br>SYSTEM, INC., EMPLOYMENT )<br>PRACTICES LITIGATION )<br>------------------------------------------------- )<br>THIS DOCUMENT RELATES TO: )<br>*Carlene M. Craig, et al. v.* )<br>*Fed Ex Ground Package System, Inc.,* )<br>Civil No. 3:05-CV-530 RLM (KS) )<br>———————————————— ) | CAUSE NO. 3:05-MD-527 RM<br>(MDL-1700) |

OPINION and ORDER

This matter is before the court on FedEx's motion for partial summary
judgment seeking dismissal of the plaintiffs' ERISA claims for failure to exhaust
administrative remedies. The plaintiff drivers brought this class action suit against
FedEx pursuant to ERISA's denial of benefit provision, 29 U.S.C. § 1132(a)(1)(B)
(ERISA § 502(a)(1)(B)). They claim FedEx violated ERISA by misclassifying them
as independent contractors instead of employees and so wrongfully denied them
the right to participate in six different employee benefit plans. It's undisputed that
the plaintiffs didn't exhaust their administrative remedies under the plan
documents, but they assert they are excused from doing so because (1) they were
denied meaningful access to administrate review, and (2) it would have been futile
to bring their claims before FedEx or FedEx's designee when FedEx has
consistently taken the position that the plaintiffs aren't entitled to any plan
benefits. Because the court disagrees with plaintiffs that they were denied

meaningful access to administrative review or that exhausting their administrative remedies would have been futile, the court GRANTS FedEx's motion for partial summary judgment and dismisses the plaintiffs' ERISA claims without prejudice.

BACKGROUND

The plaintiffs have brought their ERISA claim for benefits under the following FedEx plans: 401(k) Plan; Group Life Insurance Benefits Plan; Ground Benefits Plus Short-Term Disability Plan; Ground Benefits Plus Long Term Disability Plan; FedEx Medical, Dental and Vision Care Plan; and Dependent Care Account Plan. FedEx is the Plan Sponsor and named administrator for each plan. For example, in the 401(k) Summary Plan Description, FedEx is defined as the Plan Administrator to "act[] on [participants'] behalf to see that the Ground/Freight RSP is administered fairly according to standards outlined in the law and the terms of the Ground/Freight RSP and Trust Agreement." 401(k) SPD, p. 36. In the Ground Benefits Plus Plan Administration (FedEx Health Benefits Summary Plan Description) — a collection of the Medical, Short-Term Disability, Long-Term Disability, and Life Plans — FedEx is listed as the Plan Administrator responsible for supervision under the plans. Health Benefits SPD, p. 27.

The plan documents provide participants with the opportunity to file a claim for benefits with FedEx or its designee. The 401(k) Summary Plan Description tells participants that they may file a written claim if they believe they are entitled to benefits. 401(k) SPD, p. 38. The Group Life Insurance Benefits Plan states that to

2

make a claim "[a] completed claim form, a certified copy of the death certificate and Your enrollment form must be sent to the Employer or [Hartford Life and Accident Insurance Company]." Group Life Ins. Plan, p. 13. Hartford approves the required claims papers. Group Life Ins. Plan, p. 13. The Group Benefits Plus Short-Term Disability Plan, the Medical Plan, and the Dependent Care Account Plan each inform participants that if they believe they are entitled to receive a benefit under the plan, they may file a written claim with the claims administrator on appropriate forms furnished by the claims administrator. STD Plan, § 6.1(c); Medical Plan, § 9.1(c); Dependent Care Account Plan, 6.3(c).

Under the Ground Benefits Plus Long Term Disability Plan, notice of a claim should be given to Hartford within thirty days after a disability starts or as soon as possible, and if the claim is denied, the participant "may appeal to [Hartford] for a full and fair review." LTD Plan, p. 23. The Plan states that if a claim for benefits is "denied or ignored, in whole or in part, [the participant] may file suit in a state or federal court." LTD Plan, p. 40. The Health Benefits Summary Plan Description states that "[i]f you, a covered dependent, or a beneficiary believe that you (or they) are entitled to receive a particular benefit under Ground Benefits Plus, you (or they) may file a claim, if applicable." Health Benefits SPD, p. 25.

FedEx has delegated review of initial claims, and under some plans first-level appeals, to outside entities. For the 401(k) Plan, initial claims are handled by a third-party administrator, not FedEx. An appeal under the 401(k) Plan is made to the FedEx Corp.'s Benefits Review Committee. Outside parties administer

the initial claim or first-level appeal of claims under either the Short-Term Disability Plan or the Long Term Disability Plan, and FedEx would only be involved in a second-level appeal of a denial under these plans. For benefits under the Group Life Insurance Plan, claims are submitted to Hartford, not FedEx, and there is one level of appeal, which is to Hartford. Under the Medical Plan, outside parties process healthcare claims, dental benefits, and vision benefits. To make a claim for medical, dental, or vision benefits under the Medical Plan, a claimant doesn't address that claim to FedEx, but rather to one of the claims administrators. For any denied claim under the Medical Plan, the initial appeal goes to the respective outside administrator, with FedEx getting involved at the second appeal level.

Under the plans, FedEx or its designee has been given the authority to construe and interpret the plan documents. Section 15.4(a) of the 401(k) Plan states that "[t]he Committee shall have all . . . power and authority to: (a) Solely, exclusively and conclusively construe any ambiguity in and interpret any provision of the Plan and supply any omission or reconcile any inconsistency therein in such manner as it deems appropriate in accordance with the purpose and intent of the Plan[.]" In the Group Life Insurance Plan, the document states that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." Group Life Ins. Plan, p. 22. Hartford is the plan fiduciary and has discretion over the Plan.

Section 5.1 of the Group Benefits Plus Short-Term Disability Plan states that "[e]xcept as otherwise provided in the STD Plan, the administration of the STD Plan shall be under the supervision of [FedEx]." FedEx is authorized to appoint a committee, which "[t]o the extent necessary to carry out the claim and review responsibilities set forth in this Section . . . shall have the sole and absolute authority and responsibility for construing and interpreting the provisions of the Plan, and such authority and responsibility shall override the authority and responsibly under the Plan given to [FedEx] pursuant to Section 5.1." STD Plan, § 6.1. The Medical, Dental, and Vision Care Plan and the Dependent Care Account Plan contain similar language. Medical Plan, §§ 8.1 and 9.1; Dependent Care Account Plan, §§ 5.1 and 6.3. Under the Ground Benefits Plus Long Term Disability Plan, "[f]inal interpretation of all provisions and coverages will be governed by the Group Insurance Policy on file with Hartford Life at its home office." LTD Plan, p. 3.

Each plan also contains a definition of who qualifies as an "eligible employee" to receive benefits. Under the 401(k) Plan, only "eligible employees" may participate in the plan. An "eligible employee" is "[a]n Employee of an Employer other than an Employee in a class or group to which the Employer has not extended eligibility for participation in the Plan . . . . Neither a Leased Employee, an independent contractor, nor an employee or agent of an independent contractor, shall be deemed to be an Eligible Employee, regardless of whether a court or government agency of competent jurisdiction subsequently reclassifies

such an individual as a common-law employee of an Employer." 401(k) Plan, §
1.24. The Plan defines "employee" as "[a]n individual who is: (a) directly employed
by any Related Company and for whom any income for such employment is
subject to withholding of income or social security taxes . . . . An independent
contractor . . . shall not be deemed to be an Employee of an Employer, regardless
of whether a court or government agency of competent jurisdiction subsequently
reclassifies such an individual as a common-law employee of an Employer." 401(k)
Plan, § 1.27. The 401(k) Summary Plan Description states that "[t]he following
persons are not eligible: . . . Persons considered to be independent contractors
(even if such contracted services are later determined by a court or administrative
agency having competent jurisdiction to be services performed by a common law
employee of a Participating Employer)." 401(k) SPD, p. 5.

Under the Ground Short Term Disability Plan, a "participant" is defined as
"any Employee who is participating in the STD Plan and whose participation has
not been terminated." STD Plan, § 2.8. "Employee" is defined as "any person who
is subject to the dominion and control of an Employer with respect to the type,
kind, nature and scope of employment services furnished and who is classified as
a full-time Employee by his Employer's general policies and guidelines . . . .,
excluding, however, an Employee: . . . . (b) who is employed by [FedEx] and is
classified as a part-time or non-exempt hourly Employee; . . . or (d) who is a
leased employee or independent contractor." STD Plan, § 2.4. The Group Life
Insurance Plan defines eligible classes of participants as "[a]ll Active Full-time and

6

Part-time Employees . . ., excluding temporary and seasonal employees." Group Life Ins. Plan, p. 3. The Ground Long Term Disability Plan defines eligible classes of participants as "[a]ll Active Full-time Employees . . ., excluding temporary and seasonal employees." LTD Plan, p. 3.

Similarly, under the Medical, Dental and Vision Care Plan, a "participant" is "any Employee who is participating in the Medical Plan and whose participation has not been terminated." Medical Plan, § 2.41. "Employee" is "any person who is subject to the dominion and control of an Employer with respect to the type, kind, nature and scope of employment services furnished and is in a class or group to which an Employer has extended eligibility for participation in the Medical Plan, excluding, however, an Employee: . . . (c) who is classified as a non-exempt hourly Employee; . . . (e) who is classified by the Employer as a leased employee or independent contractor, regardless of whether such individuals are subsequently reclassified by a court or agency having competent jurisdiction as common law employees." Medical Plan, § 2.15. Eligibility under the Dependent Care Account Plan is based on the requirements for participation in the Medical Plan. Dependent Care Account Plan, § 3.1.

Michelle Ward, FedEx Senior Benefits Manager, and Beth Ewing, FedEx Corporation Staff Director of Retirement Plans, were FedEx's Rule 30(b)(6) witnesses regarding the plans. The witnesses testified that the plaintiffs could have brought claims under the plans and if the claims administrator denied the claim, the plaintiffs could have appealed. They testified the committee would treat

the claim fairly and impartially. Ms. Ward testified, though, that independent contractors are not eligible for benefits. She explained that FedEx's intent is to exclude independent contractors because they don't meet the definition of who is eligible to participate. Ms. Ewing confirmed that independent contractors are specifically excluded from participating in the FedEx 401(k) Plan because they aren't employees. Ms. Ewing also concurred that the definition of employee excludes independent contractors and that FedEx never intended to include independent contractors. Neither Ms. Ward nor Ms. Ewing could have single-handedly decided the plaintiffs' claims if they had been brought to the plan committees.

The plaintiff drivers didn't request benefits under the plans before filing suit; no one at FedEx told them they could or couldn't make a claim for benefits. The plaintiff drivers weren't provided with plan documents and first requested such documents by counsel in the course of this litigation. FedEx provided some plan documents initially in December 2005 and others in December 2006, February 2007, and March 2007.

DISCUSSION

"The text of 29 U.S.C. § 1132, providing for civil actions to redress violations of ERISA, does not address whether a claimant must exhaust her administrative remedies before filing suit in federal court." Gallegos v. Mount Sinai Med. Ctr., 210 F.3d 803, 807-808 (7th Cir. 2000). Our court of appeals has interpreted ERISA to

8

allow district courts to require exhaustion of administrative remedies as a prerequisite to filing a federal suit. Powell v. A.T. & T. Commc'ns, Inc., 938 F.2d 823, 826 (7th Cir. 1991); Zhou v. Guardian Life Ins. Co. of America, 295 F.3d 677, 679 (7th Cir. 2002) (stating that an ERISA plaintiff must exhaust all available administrative remedies before filing suit to challenge a denial of benefits).[1] "Congress's apparent intent in mandating internal claims procedures found in ERISA . . . was to minimize the number of frivolous lawsuits; promote consistent treatment of claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement." Powell v. A.T. & T., 938 F.2d at 826; see also Lindemann v. Mobil Oil Corp., 79 F.3d 647, 650 (7th Cir. 1996).

Exhaustion also protects the autonomy of plan administrators by shielding the exercise of their discretion from excessive judicial interference. "[I]mplementing the exhaustion requirement enhances the ability of plan fiduciaries to expertly and efficiently manage their plans by preventing premature judicial intervention and because fully considered actions by plan fiduciaries may

---

[1] The plaintiffs note that the summary plan descriptions for the benefit plans suggest, but don't require, that administrative review be undertaken before filing a claim in court, and the use of such permissive language "does not lead to the conclusion that the plan required exhaustion of administrative remedies before a civil action may be filed." In support, the plaintiffs cite to Gallegos v. Mount Sinai Med. Ctr., 210 F.3d at 810 ("[T]he use of the phrases such as 'you may have [your claim] reviewed,' . . . and 'you . . . may appeal,' given their plain meaning, indicate that a plan participant has the opportunity to participate in a voluntary, rather than mandatory review procedure."). The Gallegos court was addressing the application of estoppel where a participant failed to seek review of the initial denial of her claim. Id. at 810-811. Estoppel may be applied to preclude the defense of exhaustion when the plan indicates that the administrative review procedure is voluntary and won't affect the ability of the plan participant to pursue relief through the court system. Id. To establish estoppel, a plaintiff must demonstrate that she relied on the representations to her detriment. Id. at 811. The plaintiffs haven't presented evidence to support a claim for estoppel.

assist the courts when they must resolve controversies." <u>Powell v. A.T. & T.</u>, 938 F.2d at 826. "[A] primary reason for the exhaustion requirement . . . is that prior fully considered actions by pension plan trustees interpreting their plans and perhaps also further refining and defining the problem in given cases, may well assist the courts when they are called upon to resolve the controversies." <u>Kross v. Western Elec. Co., Inc.</u>, 701 F.2d 1238, 1245 (7th Cir. 1982) (*quoting* <u>Amato v. Bernard</u>, 618 F.2d 559, 567-568 (9th Cir. 1980)). Exhaustion "enables plan fiduciaries to . . . assemble a factual record which will assist a court in reviewing [their] actions." <u>Lindemann v. Mobil Oil</u>, 79 F.3d at 650 (*quoting* <u>Makar v. Health Care Corp. of Mid-Atlantic</u>, 872 F.2d 80, 83 (4th Cir. 1989)).

Whether to require exhaustion as a prerequisite to bringing a federal lawsuit, however, is a matter within the trial court's discretion and will be reversed only if it is obviously in error. <u>Lindemann v. Mobil Oil</u>, 79 F.3d at 650. Courts "may excuse a plaintiff's failure to exhaust administrative remedies (1) if there has been a lack of meaningful access to the review procedures or (2) if exhaustion of internal remedies would be futile." <u>Robyns v. Reliance Standard Life Ins. Co.</u>, 130 F.3d 1231, 1236 (7th Cir. 1997) (*citing* <u>Smith v. Blue Cross & Blue Shield United</u>, 959 F.2d 655, 658-659 (7th Cir. 1992)).

## A. Lack of Meaningful Access

The plaintiff drivers contend FedEx denied them meaningful access to administrative review because FedEx didn't comply with ERISA notice statutes.

10

The plaintiffs weren't provided plan documents and they assert that because FedEx didn't notify them that they had the right to challenge their designation as independent contractors through an internal appeals process, they should be excused from exhausting administrative remedies.

FedEx responds that the drivers' request for plan documents was made by their counsel in the course of litigation and some of the plan documents were provided to the plaintiffs as far back as December 2005. FedEx contends this exception only applies to plaintiffs who were refused access to an available appeal process and presupposes the plaintiff has made at least some effort to assert his rights under the plan and some initial decision denying benefits has been made.

FedEx is correct. The lack of meaningful access exception is available when a defendant denies the plaintiff's claim for benefits, and either the defendant refuses access to available appeal procedures or the plaintiff is unaware of any available review procedures. Potter v. ICI Americas, Inc., 103 F. Supp. 2d 1062, 1068 (S.D. Ind. 1999). A plan fiduciary isn't required to comply with the procedural requirements of 29 U.S.C. § 1133 (ERISA § 503) until a participant or beneficiary's claim is denied. Robyns v. Reliance Standard Life Ins. Co., 130 F.3d 1231, 1237 (7th Cir. 1997) ("Section 503 specifically states that the statutory requirements are to be satisfied by the plan in the event a participant or beneficiary's claim is *denied*.") (emphasis in original). Procedural and notification requirements aren't triggered until the plan administrator denies the claim. Robyns v. Reliance Standard, 130 F.3d at 1237.

Accordingly, "[t]his exception presupposes that the plaintiff has made at least some effort to assert his rights under the plan and that some initial decision denying benefits has been made." Potter v. ICI Americas, 103 F. Supp. 2d at 1068. Exhaustion isn't excused when the plaintiff has made no request for benefits or no effort to determine what administrative procedures are available. Id. (citing Smith v. Blue Cross and Blue Shield United of Wis., 959 F.2d 655, 659 (7th Cir. 1992)); see also Koenig v. Waste Mgmt., Inc., 104 F. Supp. 2d 961, 966 (N.D. Ill. 2000) (finding the plaintiff wasn't denied meaningful access of review even though he alleged he was unaware of the review procedure because there was no denial of his claim; "this [was] a classic case of jumping the gun") (citations omitted)).

In Potter v. ICI Americas, the court found that the plaintiff hadn't made a claim for benefits, and his first and only meaningful action was to file suit. 103 F. Supp. 2d at 1068. Before filing his complaint, the plaintiff's only action was to have his attorney send a letter to the defendant proposing "pre-litigation resolution" of the plaintiff's request for benefits. Id. The court found the plaintiff hadn't given the defendants any opportunity to address his concerns outside the courtroom. Id. The court held the plaintiff's "failure to take any steps to ascertain what benefits [were] available to him and to request such benefits preclude his contention that [the defendants denied] him meaningful access to the administrative claims and review procedures." Id. at 1068-1069; see also Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 133, n.2 and 134 (2d Cir. 2001) (holding that plaintiff was required to exhaust administrative remedies even

if she was ignorant of the proper claims procedure and noting that it wasn't surprising that she wasn't provided the summary plan document, given that plaintiff's employer never considered her to be covered by the plan).

The plaintiffs haven't tried to file a claim for benefits through the administrative process. The plaintiffs didn't request benefits under the plans before filing suit; no one at FedEx told them that they could or couldn't make a claim for benefits. Because the plaintiffs hadn't made at least some effort to assert their rights under the plan documents through the available administrative process, FedEx had no obligation to provide them with plan documents, especially given that FedEx has consistently asserted that the plaintiffs aren't eligible for benefits under the plans. Additionally, after suit was filed, the plaintiffs became aware of plan terms and yet didn't avail themselves of their administrative remedies. Accordingly, the plaintiffs' arguments regarding lack of meaningful access are unavailing.

## B. Futility

The plaintiff drivers argue that seeking to have a benefit plan administrator go through the motions of denying their eligibility, when explicit language in every benefit plan excludes them, is a meaningless act. When it is clear that benefit plans are only open to "eligible employees" and independent contractors are, by the plans' definitions, ineligible, the plaintiffs assert there is little point in requiring administrative review. The plaintiffs reason that FedEx has aggressively

and consistently defended its independent contractor business model, so any claim by a plaintiff for benefits under any of the plans would be rejected. Further, the plaintiffs reason that employment status is a legal question the court can address, and given the record already developed in this case, none of the traditional policy-based reasons for administrative review by plan administrators support exhaustion.

FedEx responds that as plan administrator, it has the authority to delegate, and has delegated, initial claims administration duties (and some claims appeals duties) to independent third parties. The plaintiffs' suggestion that any administrative claim would automatically be denied, FedEx contends, is no more than speculation because no plaintiff presented a claim to any plan administrator. FedEx asserts that the undisputed evidence establishes the plaintiffs could present a claim and would receive a full and fair review of any such claim. Whether class members fall within the eligibility requirements of each plan, FedEx reasons, should be decided initially by the plan administrators. FedEx reasons that plan eligibility isn't a pure question of law or an automatic remedy for reclassification, but requires a close examination of the plans' language and history. Allowing the plaintiffs to skip over the administrative remedies provided by the plans, FedEx says, would undermine the policy objectives underlying the requirement to exhaust administrative remedies.

To come under the futility exception to the exhaustion requirement, the plaintiffs must show that "it is certain that their claim will be denied on appeal,

not merely that they doubt an appeal will result in a different decision." Smith v. Blue Cross & Blue Shield United of Wis., 959 F.2d 655, 659 (7th Cir. 1992). A claim of futility mustn't be based on bare allegations or conjecture. Robyns v. Reliance Standard, 130 F.3d at 1237; *see also* Zhou v. Guardian Life Ins. Co. of America, 295 F.3d 677, 680 (7th Cir. 2002) ("When a party has proffered no facts indicating that the review procedure that he initiated will not work, the futility exception does not apply.").

That FedEx would be the one deciding the plaintiffs' claims for benefits under the plan documents or has consistently denied the plaintiffs' eligibility for benefits in the course of litigation isn't sufficient to show futility. Ames v. American Nat. Can Co., 170 F.3d 751, 756 (7th Cir. 1999); *see also* Robyns v. Reliance Standard, 130 F.3d at 1238 (absence of neutral arbitrator not determinative of futility of administrative remedy). In Stark v. PPM America, Inc., 354 F.3d 666, 671-672 (7th Cir. 2004), the plaintiff claimed that pursuing internal remedies would have been futile because the person who terminated him would have participated in the ultimate decision. The plaintiff further pointed out that settlement negotiations were unsuccessful and the defendants took the position in the litigation that he wasn't entitled to benefits. Id. at 672. The court noted that there was no evidence that either the plan administrator or the committee would have failed to fulfill their duty to fairly consider his claim. Id. The court reasoned that it would be "bizarre . . . to find that a plan's price for prevailing on the exhaustion argument is that it is estopped from urging the interpretation of the

15

plan that it believes is correct." Id. (internal quotations and citation omitted); *see also* Robyns v. Reliance Standard, 130 F.3d at 1238 (plaintiff claimed an administrative appeal would be futile because the defendant was predisposed to deny her claim; the court disagreed because the evidence was insufficient to show that the defendant's review procedure wouldn't root out any predisposition).

Similarly, in Potter v. ICI Americas, 103 F. Supp. 2d at 1069, the court found that the plaintiff didn't show that exhausting his administrative remedies would be futile. The plaintiff brought suit under ERISA alleging that he suffered damages resulting from being misclassified as an independent contractor rather than an employee. Id. at 1063. The plaintiff argued that exhaustion would be futile because one of the named defendants was also the plan administrator, and exhaustion would be fruitful only if the defendant would admit it improperly classified him as an independent contractor. Id. at 1069. The defendant wouldn't make that admission, which necessitated the filing of suit. Id. The court rejected the plaintiff's futility argument, reasoning that even assuming that the defendant was predisposed to deny the claim, that wouldn't assure that the claim was certain to fail. Id. at 1069.

A district court may find futility where it is evident that the claim would have been denied at the administrative level and there is little utility in administrative review. In Ruttenberg v. United States Life Ins. Co., 413 F.3d 652, 662 (7th Cir. 2005), the plan committee denied the plaintiff's claim, and he filed suit before filing an administrative appeal within the allowable 180-day time

period under the plan. The court held that the plan didn't give U.S. Life interpretative discretion in construing the plan terms and its review of the committee's decision was therefore *de novo*. Id. at 659. The court affirmed the district court's finding of futility because there was nothing in the record indicating that the plan committee would have altered its decision to deny benefits. Id. at 663. The defendant had opposed the plaintiff's claim at every step. Id. The court concluded that "[t]he history of this matter, both before the district court and in administrative proceedings, provides ample support for the district court's view that U.S. Life would have denied Mr. Ruttenberg's claim even if he had filed an administrative appeal." Id. Accordingly, the appellate court couldn't "say that the district court's futility determination was 'down-right unreasonable.'" Id.; *see also* Salus v. GTE Directories Serv. Corp., 104 F.3d 131, 138 (7th Cir. 1997) (affirming district court's decision to not require exhaustion; the defendant didn't dispute that the plaintiff was clearly not entitled to any benefits under the plan and that, had the plaintiff filed a claim for benefits, his claim would have been denied).

In Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 419-420 (6th Cir. 1998), the plaintiff alleged that Nationwide had a methodology of calculating reimbursement under the plan that violated the actual terms of the plan. The court found that exhausting administrative remedies would be futile where Nationwide had consistently defended its long-standing policy that the plaintiff class was challenging. Id. at 420. The plaintiff, on his own behalf and on behalf

of a proposed class, had engaged in a two-year long "triangular dialogue of communications in every direction [with] the State Insurance Department[] and Nationwide" regarding the methodology Nationwide used to calculate reimbursements under the plan. Id. at 417. The court excused the failure to exhaust administrative remedies because Nationwide consistently defended its policy, refused to provide more than a cursory explanation of its methodology, and insisted that it would continue to use its method of calculation despite evidence that the policy violated the actual terms of the plan. Id. at 420. The factual record already was well-established, and the court reasoned that requiring exhaustion would only have resulted in additional litigation costs. Id. at 421.

When making a futility determination, courts should also consider whether the benefit determination involves an interpretation of the plan's terms or a pure legal question of statutory analysis. "When a benefit determination involves a matter of Plan interpretation, the Seventh Circuit strongly recommends that a plaintiff exhaust any and all administrative remedies in order to serve the strong federal policy of encouraging private rather than judicial resolution of ERISA [claims]." Williams v. Rohm and Haas Pension Plan, No. NA02-C-0123-B/H, 2003 WL 22271111, at *2 (S.D. Ind. Sept. 26, 2003). On the other hand, "[w]hen a claimant . . . has no individual quarrel with the interpretation of the contract but alleges a purely statutory violation, then presumably no federal policy is served by requiring exhaustion." Id.; see also Donaldson v. Pharmacia Pension Plan, 435 F. Supp. 2d 853, 861 (S.D. Ill. 2006) (finding exhaustion would have been futile

18

in part because judicial resolution of the plaintiffs' claims involved statutory interpretation that the court would consider *de novo*, without deference to the opinions of the plan's administrators); Thompson v. Retirement Plan for Employees of S.C. Johnson & Sons, Inc., No. 07-CV-1047, 2008 WL 4964714, at *5-*6 (E.D. Wis. Nov. 14, 2008) (finding exhaustion would be futile in part because the primary issue was a legal one that would be reviewed *de novo*).

Benefit determinations by plan administrators under ERISA are reviewed *de novo* unless the plan's trustees have discretionary authority to determine eligibility. Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan, 102 F.3d 1435, 1437 (7th Cir. 1996). If the plan grants to its administrator the discretion to construe the plan's terms, the district court must review a denial of benefits deferentially, asking only whether the plan's decision was arbitrary or capricious. Hess v. Reg-Ellen Mach. Tool Corp. Employee Stock Ownership Plan, 502 F.3d 725, 727 (7th Cir. 2007). Regardless of whether the plan contains the discretionary language, the court reviews *de novo* questions of law, such as whether the plan as interpreted violates ERISA. Silvernail v. Ameritech Pension Plan, 439 F.3d 355, 357 (7th Cir. 2006).

The reservation of discretion should be communicated clearly in the language of the plan, but the plan needn't use any particular magic words. Herzberger v. Standard Ins. Co., 205 F.3d 327, 331 (7th Cir. 2000). "[T]he critical question is whether the plan gives the employee adequate notice that the plan administrator is to make a judgment within the confines of pre-set standards, or

if it has the latitude to shape the application, interpretation, and content of the rules in each case." Diaz v. Prudential Ins. Co. of America, 424 F.3d 635, 639-640 (7th Cir. 2005); *see also* Gutta v. Standard Select Trust Ins. Plans, 530 F.3d 614, 619 (7th Cir. 2008) (holding the following language was adequate to signal discretion in the plan administrators: "full and exclusive authority to control and manage, . . . to administer, . . . and to interpret and to resolve all questions arising in its administration, interpretation, and application;" "[t]he right to determine [e]ligibility [and] entitlement;" "any decision Standard makes in the exercise of our authority is conclusive and binding"); Shyman v. Unum Life Ins. Co., 427 F.3d 452, 455 (7th Cir. 2005) (reviewing decision under arbitrary and capricious standard where plan gave administrator discretionary authority to determine eligibility for benefits and to interpret the terms and conditions of the plan); Crowell v. Bank of America Pension Plan for Legacy Cos., No. 09-C-01921, 2010 WL 1930112, at *2 (N.D. Ill. May 12, 2010) (finding the following language provided discretionary authority to the committee: "The Committee has, among its many powers, the full, conclusive and exclusive power and discretion to interpret and construe the terms and conditions of the Plan."); *contrast* Diaz v. Prudential Ins. Co., 424 F.3d at 639-640 (applying *de novo* standard of review to pension plan that required proof of a claim to be "satisfactory" to the administrator but failed to confer discretion on the administrator).

Most of the plan documents at issue in this case explicitly provide authority for FedEx or its designee to construe and interpret the plan documents. *See* 401(k)

Plan, § 15.4(a) ("The Committee shall have all . . . power and authority to: (a) Solely, exclusively and conclusively construe any ambiguity in and interpret any provision of the Plan and supply any omission or reconcile any inconsistency therein in such manner as it deems appropriate in accordance with the purpose and intent of the Plan[.]"); Group Life Insurance Plan, p. 22 (stating Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy"); STD Plan, § 6.1 (FedEx is authorized to appoint a Committee, which "[t]o the extent necessary to carry out the claim and review responsibilities set forth in this Section . . . shall have the sole and absolute authority and responsibility for construing and interpreting the provisions of the Plan"); Medical Plan, § 8.1 and § 9.1 and Dependent Care Account Plan, § 5.1 and § 6.3 (containing similar language); *see also supra* note 3 discussing language in LTD plan.

The plans' language makes it clear that the plan administrator or its designee has sole discretion to apply, construe, and interpret the plan documents. A court applies an abuse of discretion standard when the language of the plan document explicitly outlines the administrator's authority to interpret the plan's terms. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989) (If the trust documents give the trustee "power to construe disputed or doubtful terms, . . . the trustee's interpretation will not be disturbed if reasonable."). When the terms of a plan grant discretionary authority to the plan administrator, a deferential standard of review remains appropriate even in the face of a conflict.

Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105 (2008). The court must weigh the conflict as a factor when determining whether there was an abuse of discretion. Id.; *see also* Fischer v. Life Ins. Co. of North America, No. 1:08-cv-0396-WTL-TAB, 2009 WL 734705, at *1 (S.D. Ind. Mar. 19, 2009).

"Congress enacted ERISA to ensure that employees would receive the benefits they had earned, but Congress did not require employers to establish benefit plans in the first place." Conkright v. Frommert, __ U.S. __, 130 S. Ct. 1640, 1648 (2010). ERISA "induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." Conkright v. Frommert, 130 S.Ct. at 1649. The deference afforded to plan administrator's decisions protects these interests and, "by permitting an employer to grant primary interpretive authority over an ERISA plan to the plan administrator, preserves the 'careful balancing' on which ERISA is based." Id. Deference promotes efficiency, predictability, and serves the interest of uniformity. Id.

The plaintiffs argue that this court's review of a determination by the plan administrator of employee status must be based on the standards set forth in Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-324 (1993), therefore requiring *de novo* review. The plaintiffs' argument finds justification in this court's order granting class certification of the plaintiffs' ERISA claims (doc. # 906). In the class certification order, the court indicated that if the plaintiffs satisfy the

22

common law definition of employee under <u>Darden</u>, they are eligible for benefits under the plan. The court stated that if it "determines that the named plaintiffs are common law employees, they can't be independent contractors, despite FedEx classifying them as such, so by demonstrating they are common law employees, the package drivers can satisfy both prongs of eligibility." Doc. # 906, pp. 51-52 (*citing* <u>Burrey v. Pacific Gas and Elec. Co.</u>, 159 F.3d 388 (9th Cir. 1998), and <u>Daughtrey v. Honeywell, Inc.</u>, 3 F.3d 1488, 1492-1493 (11th Cir. 1993)). The court further stated that "allowing an employer to define participant status through exclusionary language that denies coverage to those parties based solely on the employer's classification of them as independent contractors, regardless of the reality of the employment relationship, runs contrary to the teachings of <u>Darden</u>." Doc. # 906, p. 52.

The class certification order wasn't a decision on the merits; the court takes this opportunity to clarify its order. Courts use a two-prong analysis in deciding whether a plaintiff is entitled to benefits under ERISA. The first prong requires that a plaintiff seeking to recover benefits due to him be a "participant or beneficiary." 29 U.S.C. § 1132(a)(1). Participant status requires the plaintiff to show he is an "employee" as determined by the common law test the Supreme Court set forth in <u>Darden</u>. 29 U.S.C. § 1002(7); *see also* <u>Nationwide Mut. Ins. Co. v. Darden</u>, 503 U.S. at 323 (construing the term "employee" for purposes of determining who has participant standing to sue under ERISA); <u>Sallee v. Rexnord Corp.</u>, 985 F.2d 927, 929 (7th Cir. 1993). Employment status under ERISA

requires an independent review by the court. Wolf v. Coca-Cola Co., 200 F.3d 1337, 1340 (11th Cir. 2000).

The second prong of the analysis requires that the plaintiff be eligible to receive benefits according to the plan's terms. Estate of Suskovich v. Anthem Health Plans of Virginia., 553 F.3d 559, 571 (7th Cir. 2009) (*citing* Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan, 102 F.3d 1435, 1437 (7th Cir. 1996)). Eligibility under ERISA isn't automatic for common law employees. Estate of Suskovich v. Anthem Health Plans, 553 F.3d at 571; *see also* Bronk v. Mountain States Tel. and Tel., Inc., 140 F.3d 1335, 1338 (10th Cir. 1998) (disagreeing with district court that ERISA's minimum participation standards require that leased employees, who meet the test for common law employee status, be automatically included in the company's plan, whether or not they were excluded under the terms of the plan). Rather, employers are free to "limit plan participation to certain groups or classifications of employees, as long as that limitation [is] not based upon age or service." Bauer v. Summit Bancorp, 325 F.3d 155, 166, n.20 (3d Cir. 2003) ("[A]n employer could even exclude all persons whose names begin with the letter 'H,' as long as this was not deemed to be discriminatory in application.").

In Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan, 102 F.3d 1435, 1436 (7th Cir. 1996), the plaintiffs brought claims under ERISA, claiming entitlement to benefits under the defendants' ESOP. The defendants responded that the plaintiffs had always been independent contractors, not

employees, and so never had been eligible to participate in the ESOP. Id. The court found that the plan's language granted the committee discretion in determining who qualified to enter the plan and so reviewed the committee's decision under the deferential standard. Id. at 1437-1438.

The ESOP provided that "Employees" were eligible to participate in the plan and defined "Employee" as "any individual who is or has been employed or self-employed by an Employer." Id. at 1438. The plaintiff argued that the phrase "employed by an Employer" is used in ERISA and already had been conclusively interpreted by the Supreme Court in Darden. Id. at 1439. The plaintiff said that because Darden applied the test for common law employees to that phrase, it was arbitrary and capricious for the committee to interpret the phrase differently. Id. The court found the plaintiffs' argument missed the mark because there is no requirement that the phrase carry the same meaning under the ESOP as the Supreme Court has afforded a similar phrase in the statute. Id. Cragin was free to define the terms in its plan however it chose. Id. at 1439-1440. Further, the court noted that it's "not enough to determine that they are common law employees of Cragin because Cragin need not extend th[e] benefits plan to all employees." Id. Nothing in ERISA compels a plan to use the term "employee" in the same way it is used in the statute. Darden construed the term "employee" to determine who has standing to sue under ERISA, not to determine who is eligible to claim benefits under the terms of a plan.

The court held that the committee reasonably concluded that plaintiffs weren't self-employed by an "Employer," but were self-employed by themselves. Id. at 1439. The committee also determined that plaintiffs weren't "employed" by an Employer because each had signed an agreement designating themselves as independent contractors for all purposes and had considered themselves to be independent contractors for tax liability purposes. Id. The court ruled the committee had "reasonably concluded that persons who were identified both by themselves and by Cragin as independent contractors were not in the same category as persons identified by Cragin as Employees for the purposes of benefits determinations." Id. Cragin hadn't expressed any intent to treat plaintiffs as employees for purposes of the ESOP; Cragin had consistently denied plaintiffs participation in the ESOP and had never provided them with ESOP benefits statements or copies of the Summary Plan Description. Id. The court therefore found that the committee's decision was reasonable. Id.

Additionally, although Cragin never conceded that status as a common law employee would suffice to establish eligibility in the ESOP, the committee carefully considered and rejected the plaintiffs' argument that they were common law employees under the standard set out in Darden. Id. at 1439. The court noted that the committee's decision was well within the bounds of its discretion to interpret the terms of the plan. Id. Although the Trombetta plaintiffs were able to point to evidence supporting the finding of an employment relationship, the court held the committee's decision wouldn't be overturned absent special circumstances, such

as fraud or bad faith, as long as the committee has offered a reasoned explanation, based on the evidence, for the decision. Id. at 1440.

Other circuits have followed the reasoning in Trombetta, allowing the plan administrator to determine the definition of "employee" different from the standard set forth in Darden. In Kolling v. American Power Conversion Corp., 347 F.3d 11, 13 (1st Cir. 2003), the plan defined eligible employees as "Employees of the Employer" including "leased employees," but didn't define further who was an "Employee of the Employer." Consistent with APC's business practice, the administrator applied a W-2 definition to the term "employee." Id. Under this definition, only individuals paid on an IRS W-2 form basis were eligible to receive ESOP contributions. Id. The plaintiff brought a claim for benefits under ERISA, and the court found that the plaintiff "may have a plausible argument that he was a common law employee of APC, but it is the language of the Plan, not common law status, that controls." Id. at 14. "Where, as here, the Plan adopts a circular definition of employee – 'Employer of the Employer' – the Plan administrator has the discretion reasonable to determine the meaning of that phrase." Id. (citing Trombetta, 102 F.3d at 1439-1440); see also Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342 (11th Cir. 2000) (even if plaintiff was a common law employee, the court found that she wasn't entitled to benefits because she wasn't a "regular employee" as defined by the plan).

In Scruggs v. ExxonMobil Pension Plan, 585 F.3d 1356, 1363-1364 (10th Cir. 2009), the term "employee" in the plan documents was ambiguous, and the

plan administrator interpreted the term as limited to individuals on ExxonMobil's payroll, a category that didn't include all people who might be considered employees under ERISA. The administrator considered it irrelevant whether the plaintiff had been a common-law employee. Id. at 1364. The court concluded the administrator's interpretation of the plan documents, distinguishing between persons who were and weren't on ExxonMobil's payroll, wasn't arbitrary and capricious. Id. at 1365; *see also* Boggess v. Monsanto Co., No. 2:01-1300, 2003 WL 715985, at *5 (S.D. W. Va. Feb. 10, 2003) (noting that the court needn't make a final determination of whether the plaintiff was a common law employee because the plan only covered employees the employer classifies on its payroll and other business records as having a common law employment relationship and the committee acted within its discretion in interpreting this provision to exclude plaintiff).

In Martin v. Public Service Elec. & Gas Co., Inc., No. 05-5801 (DMC), 2006 WL 3491063, at *5 (D.N.J. Dec. 4, 2006), *aff'd on other grounds,* 271 Fed. Appx. 258 (2d Cir. 2008), the plaintiffs argued that the defendants couldn't simultaneously classify plaintiffs as "common-law employees" for purposes of the first prong (Darden analysis) and as "independent contractors" under the second prong (eligibility analysis). The plan documents excluded independent contractors from the definition of employee, even those independent contractors who might be determined to be a common law employee by the Internal Revenue Service, other governmental agency, or court. Id. The court found that the "[d]efendants clearly

28

preserved their right under ERISA to exclude from eligibility individuals classified as independent contractors." Id. The plaintiffs argued the defendant had misclassified them, but the court reasoned that the defendants were free to make such classifications under ERISA. Id. The court stated it "must enforce the plans' clear language excluding independent contractors, such as [the p]laintiffs, from eligibility for benefits because there is no indication that this exclusion was arbitrary or capricious." Id. The court concluded that the "[d]efendants, through clear language in the plan, preserved their right to exclude individuals classified as independent contractors, even if those individuals would normally qualify as common law employees." Id. at *6.

When there is no definition of "employee" in the plan documents, courts have found it reasonable to apply the Darden test to determine eligibility. Coonley v. Fortis Benefit Ins. Co., 956 F. Supp. 841, 856, n.15 (N.D. Iowa 1997) (stating that where the plan is silent as to the definition of "employee," it is reasonable to assume that the same definition as is applicable to who is an "employee" under the ERISA statute would apply under an ERISA plan), aff'd by 128 F.3d 675 (8th Cir. 1997); see also Burrey v. Pacific Gas and Electric Co., 159 F.3d 388, 391-394 (9th Cir. 1998) (where the plans provided benefits to "employees" but not to "leased employees," as defined by Section 414(n) of the Internal Revenue Code, and § 414(n) didn't define "employee," the court used the common-law definition of "employee" to determine both prongs of the test); Vizcaino v. Microsoft Corp.,

120 F.3d 1006, 1013 (9th Cir. 1997) (where plan expressly made "common law employees" eligible for benefits, the two prongs of the test collapse).

The court disagrees with the plaintiffs that requiring exhaustion of administrative remedies would be futile. FedEx has delegated review of initial claims, and some claims appeals duties, to outside entities. And even though FedEx is involved in the final appeal process under most plans, it wouldn't be futile to have third parties decide the initial claims. Merely showing that FedEx is predisposed to deny the plaintiffs' claims and has consistently taken that position in this lawsuit isn't sufficient to show by certainty that the claims would be denied. Stark v. PPM America, 354 F.3d at 671-672; Robyns v. Reliance Standard, 130 F.3d at 1238. The plaintiffs haven't presented their claims to the plan committees or tried to go through the administrative process for review of their claims. There is evidence in the record that their claims would be reviewed fairly. Even though it is likely the plaintiffs' claim will be denied because FedEx has classified them as independent contractors, the court declines to exercise its discretion to find futility when the evidence is insufficient to show with certainty that the claims would be denied.

Return to the administrative process will serve the purposes of the exhaustion doctrine. The administrators' construction of the plans' terms of eligibility will assist judicial review of the plaintiffs' claims.[2] "As a consequence of

---

[2] In addition to language in the plan documents, the parties have introduced language from summary plan documents. While the summary plan documents provide useful information to participants in explaining plan documents, if there is a conflict between the plan and the summary

[the plaintiffs'] failure to exhaust, the record is in a posture less amenable to review." <u>Glaze v. Sysco Corp.</u>, No. 1:05-cv-1546-DFH-WTL, 2007 WL 1701931, at *3 (S.D. Ind. June 11, 2007). The plans have varying eligibility requirements and definitions of "eligible employee;" the plan committees are in the best position to interpret these terms initially and to determine who is entitled to receive benefits or who is excluded from coverage.[3] Applying the exhaustion requirement allows the plan fiduciaries to manage their plans expertly and efficiently, and a fully considered action by plan fiduciaries will assist judicial resolution of this controversy if the claims are denied.

Some of the plans expressly exclude those classified as independent contractors, even if the court later determines that the plaintiffs are common law employees. The plan committees can determine whether under such plans persons "classified as independent contractors" are entitled to benefits after reviewing the relevant plan language. The committees' decisions will be reviewed under the arbitrary and capricious standard. Whether the plaintiffs are employees under the ERISA statute (the <u>Darden</u> common law test) isn't necessarily relevant

---

plan descriptions, the former governs unless the plan participant or beneficiary has reasonably relied on the summary plan description to his detriment. <u>Health Cost Controls of Illinois, Inc. v. Washington</u>, 187 F.3d 703, 711 (7th Cir. 1999).

[3] The Group Benefits Long Term Disability Plan states that "[f]inal interpretation of all provisions and coverages will be governed by the Group Insurance Policy on file with Hartford Life at its home office." LTD Plan, p. 3. At this time, the court doesn't address whether this language is sufficient to confer discretion on the plan administrator under the arbitrary and capricious standard. For purposes of judicial economy, the court addresses the plan documents together in determining that exhaustion of administrative remedies wouldn't be futile. Even if discretionary authority isn't afforded under the LTD Plan, it is more prudent to address all the plaintiffs' ERISA claims under the various plans after they have exhausted their administrative remedies.

to this analysis. Even though some plans don't define who is an "eligible employee," it will assist the court if the plan committee determines that definition in the first instance and develops an administrative record for the court to review. As some courts have indicated, a reasonable definition of "employee" where the plan documents are silent can be found in the <u>Darden</u> analysis. The parties have briefed the issue of whether the plaintiffs are common law employees under the first prong of ERISA, but the court might not need to address this issue depending on the reasonableness of the committees' determination of eligibility under the plans. Even if the court were to decide common law employment status under <u>Darden</u>, the issue of eligibility under the plans would still need to be addressed. Having the committee determine eligibility might promote settlement or alternatively save the court and parties time and resources by narrowing the issues that must be decided. In short, the administrative process will likely sharpen the issues, provide a reasoned resolution of various issues, and facilitate any later judicial review.

Not all class members must exhaust their administrative remedies. <u>In re Household Int'l Tax Reduction Plan</u>, 441 F.3d 500, 501-502 (7th Cir. 2006) (holding that unnamed class members in an ERISA class action suit don't necessarily have to exhaust their plan remedies as a condition to being members of the class). Only the named plaintiffs in this case must exhaust administrative remedies.

Because the court finds that the plaintiffs weren't denied meaningful access to review procedures or that exhaustion of administrative remedies would be futile, the court GRANTS FedEx's motion for partial summary judgment on the plaintiffs' ERISA claims for failure to exhaust administrative remedies (doc. # 1409). The court dismisses the plaintiffs' ERISA claims without prejudice with leave to re-file once the named plaintiffs have exhausted their available administrative remedies under the ERISA plans.

SO ORDERED.

ENTERED:  __June 28, 2010__

__/s/ Robert L. Miller, Jr._____
Judge
United States District Court