UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| IN RE: FEDEX GROUND PACKAGE SYSTEM, INC. EMPLOYMENT PRACTICES LITIGATION (MDL 1700) | Cause No. 3:05-MD-527 RLM |
| *This Document Relates to*: | |
| CARLENE M. CRAIG, *et al.*, | |
| *Plaintiffs* | |
| vs. | Cause No. 3:05-CV-530 RLM |
| FEDEX GROUND PACKAGE SYS., INC. | |
| *Defendant* | |

OPINION AND ORDER

For the following reasons, the court grants the plaintiffs' motion[1] for preliminary approval of the proposed ERISA class action settlement [Doc. No. 3152].

I. *Procedural History*

The plaintiffs filed this suit, the Kansas ERISA class action, in 2004, and amended their complaint in January 2006 to include an ERISA national class action. The court granted the plaintiffs' motion to certify a nationwide ERISA class in October 2007. The class included:

---

[1] Not all of the plaintiffs named in the Fifth Amended Complaint joined in the motion for preliminary approval. Carlene Craig withdrew as a named plaintiff on November 29, 2006 [Doc. No. 409], and Ronald Perry and Alan Pacheco have filed objections to the motion [Doc. No.3166].

> All persons who: 1) entered into a FXG Ground or FXG Home Delivery Form Operating Agreement (now known as a Form OP-149 and Form OP-149 RES); 2) drove a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employmet absences) during the class period to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were eligible for ERISA Plan benefits, absent their mischaracterization as independent contractors.

[Doc. No. 906].[2]

On June 28, 2010, the court granted FedEx Ground's motion for partial summary judgment, and dismissed the plaintiffs' ERISA claims without prejudice for failure to exhaust administrative remedies. [Doc. No. 2078]. Pursuant to the order, only the named plaintiffs in the *Craig* case were required to exhaust their administrative remedies. Id. at p. 32 (citing In re Household Int'l Tax Reduction Plan, 441 F.3d 500, 501-02 (7th Cir. 2006)).

Administrative review was completed in February 2011, while the *Craig* case was on appeal. When the court of appeals remanded the case in July 2015, the parties moved for an immediate stay, so they could engage in settlement negotiations.

---

[2] Plaintiffs' Fifth Amended Complaint and Section I(B) of the proposed Settlement Agreement modify the class to exclude class members in the Arkansas, Florida, and Indiana cases, *Harris v. FedEx Ground Package System, Inc.*, No. 4:06-CV-175 (E.D. Ark.), *Carlson v. FedEx Ground Package System, Inc.*, No. 8:05-CV-1380 (M.D. Fla.), and *Riewe v. FedEx Ground Package System, Inc.*, No. 3:05-CV-390 (N.D. Ind.), because they released their ERISA claims under the terms of prior settlements [Doc. No. 3076-1 at ¶ 41][Doc. No. 3154-1], but the parties have not sought leave to amend the certification.

Michael Dickstein was selected to serve as mediator, and successfully negotiated the settlement of the non-ERISA claims. Mediation on the ERISA claims was set for June 6, 2016. In preparation, the plaintiffs retained a forensic accounting expert, David Breshears, to calculate their potential damages and to prepare a damage exposure model, the parties exchanged their damages models, and plaintiffs' Co-Lead Counsel consulted with local counsel for the named plaintiffs and coordinated their attendance at the mediation. The parties didn't reach an agreement on June 6, 2016, but they continued to work with Mr. Dickstein toward resolution of the ERISA claims, and on June 7, 2017 executed a "Deal Point Memorandum" setting forth the terms of a tentative settlement.

On June 19, 2017, the plaintiffs filed their Fifth Amended Complaint reasserting the ERISA claims and related state law claims,[3] and in late August/early September 2017 they executed the Settlement Agreement [Doc. No. 3154-1] for which the plaintiffs now seek preliminary approval.

II. *The Proposed Settlement*

Under the terms of the Settlement Agreement, FedEx Ground would pay $13,325,000 (the "Total Settlement Fund") to resolve all ERISA class claims (and

---

[3] The Fifth Amended Class Action Complaint asserts claims for violations of ERISA and the Kansas Wage Payment Act, rescission of the Operating Agreement, fraud, and declaratory judgment [Doc. No. 3076-1]. The plaintiffs report that the state law claims contained in the original and amended complaints were settled on October 29, 2015, after the case was remanded with instructions to find that the plaintiffs were employees. [Doc. No. 3153 at p. 10] [Doc. No. 3154 at ¶¶ 14].

similar state laws) that were brought, or could have been brought, against FedEx Ground during the release period, which runs from the beginning of "the class period" (February 11, 1998 for Kansas class members and January 9, 2001 for all other class members) through September 8, 2017, "the date of filing [the] motion for preliminary approval of the settlement". [Doc. No. 3154-1(Sec. I(W))]. In exchange, the named plaintiffs and all class members who don't opt out would be required to execute a general release of any claim they had or may have had during that 15-year period.

The plaintiffs' Lead Counsel propose to distribute the $13,325,000 settlement this way:

(1) Administration and notice costs – approximately $125,000;

(2) Service awards to the 13 named plaintiffs – totaling $67,500;

(3) Attorneys' fees – a "maximum of" $4,377,062 (33.33% of the Total Settlement Fund after deductions for administrative costs and service awards);

(4) Life Insurance Fund – 52.5% of the "net common fund" (an estimated $4,527,659.20) will be allocated "to resolve claims for life insurance benefits presented by the legal heirs or estates of deceased class members who died while their [FedEx Ground] contracts were active," with any remaining balance reverting to FedEx Ground;

(5) General Settlement Fund – 47.5% of the "net common fund" (an estimated $4,104,251.97) will be allocated "to resolve the ERISA benefit claims under the other employee benefit plans that were in effect during the release period, which include the [FedEx Ground] medical, dental, vision, long term disability, short term disability, and 401(k) plans," with no reversion; and

(6) Reserve Fund – $131,325 (1% of the Total Settlement Fund after deductions for administrative costs and service awards).[4]

[Doc. No. 3153 at p. 12][Doc. No. 3154 at ¶¶ 17-18]. Counsel estimated that the average recovery per class member will be around $197.01 (ranging between $10.07 to $764.93), and asserted that the $13,325,000 settlement "represents approximately 127% of net expected settlement value and approximately 25% of Plaintiffs' maximum damages (including interest under ERISA – well within the range of reasonable settlement value." [Doc. No. 3153 at pp. 13 and 23-24][Doc. No. 3154 at ¶ 28].

Two of the named plaintiffs, Ronald Perry and Alan Pacheco, filed an objection to the motion for preliminary approval, contending that: "[t]he proposed settlement is premised on the assumption that there is no possibility of plaintiffs prevailing on any ERISA claims after 2001 and 2002" – when FedEx Ground amended its medical and 401(k) benefit plans to exclude from coverage persons who were "independent contractors later adjudged by a court to be an employee" [Doc. No. 3154-13] – but requires class members to release FedEx from liability for any ERISA claims that may have arisen in the fifteen years since the plans

---

[4] By the court's calculation, the net Settlement Fund available for distribution to the General Settlement and Life Insurance Funds would be $8,624,113 ($13,325,000-$125,000 (administrative and notice costs)-$67,500 (service awards)-$4,377,062 (attorneys' fees)- $131,325 (Reserve Fund)). Of that amount, $4,527,659.20 would be allocated to the Life Insurance Fund (52.5% of the net Settlement Fund), as plaintiffs contend, leaving $4,096,453.68 (not $4,104,251.87) for the General Settlement Fund (47.5% of the net Settlement Fund) – a difference of approximately $7,798.

were amended, without providing any compensation for the extended release. Counsel for Mr. Perry and Mr. Pacheco believes the fifteen-year release required under the settlement's terms is unreasonable because class members might still have a viable ERISA claim after 2001 based on an alleged violation of the anti-discrimination provisions in § 401(m) of the Internal Revenue Code, and the value of that claim, even if minimal, wasn't included in the plaintiffs' damages model or considered by Plaintiffs' Lead Counsel in determining what a reasonable settlement would be.[5] But that argument is speculative at best, and unsupported by the evidence.

The objecting plaintiffs' counsel makes conclusory statements about what the projected value of any post-2001 claims might be, and surmises that the total maximum damages might reach $810 million – a far cry from the $53,712,484 maximum damages estimate used by Plaintiffs' Co-Lead and Class Counsel as the starting point in determining what a reasonable settlement might be. But she provides no evidentiary basis for her calculations and only a cursory statement

---

[5] Plaintiffs' counsel opines that: (1) the amendments to the benefit plans may violate IRS anti-discrimination provisions [Internal Revenue Code § 401(m)], which "would not allow FedEx to exclude its drivers from coverage because, if the drivers are employees (regardless of how they are classified), the plans would be overly 'top heavy', meaning that they would provide benefits disproportionately to higher paid employees (i.e. FedEx managers)"; and (2) "ERISA may provide a private right of action to enforce these provisions." *Citing i.e.*, Crouch v. Mo-Kan Iron Workers Welfare Fund, 740 F.2d 805, 808-09 (10th Cir. 1984); Renda v. Adam Meldrum & Anderson Co., 806 F.Supp. 1071, 1082 (W.D. N.Y. 1992). [Doc. No. 3166 at p. 2-3, n. 5].

regarding her IRC theory of liability; she hasn't shown that the proposed settlement is unreasonable.

Plaintiffs' Co-Lead and Class Counsel attest in their affidavits that:

- Their valuation of the ERISA claims was based upon the report of a forensic accountant, David Breshears, taking into consideration the multiple risks associated with this litigation, the likelihood of success of the § 501(a)(1) claims raised in the Fifth Amended Complaint, and the viability of claims that might exist after FedEx Ground amended the medical and 401(k) plans, including the IRC claim.

- "After researching the legal issues and considering such a claim in the context of the facts presented, counsel for the [class representatives] determined the likelihood of success on any such claim to be extremely low and assigned a very low probability of succeeding on claims other than under Section 502(a)(1) for benefits."

- Applying the same discounts used to value the other ERISA claims and assuming the IRC claim had a likelihood of success between .05% and 5%, the settlement range for that claim would add between $77,200 and $7,720,000 to the estimated net value of the other ERISA claims ($10,436,200) for an aggregate settlement range of between $10,513,400 and $18,156,200.

- The $13,325,000 proposed settlement is "just below midpoint of th[at] range" and is "within the range of a reasonable settlement."

[Doc. No. 3154 at ¶¶ 26-30][Doc. No. 3168 at ¶¶ 3-8].

Based upon the limited record before it, the court agrees. Neither Mr. Perry, nor Mr. Pacheco, has presented any evidence to the contrary.

### III. *Findings and Conclusions*

Pursuant to Fed. R. Civ. P. 23, the court FINDS that the terms of the Settlement Agreement are: (a) fair, reasonable, and adequate in light of the

relevant factual, legal, practical and procedural considerations of the action; (b) free of collusion to the detriment of the class members; and (c) within the range of possible final judicial approval, subject to further consideration thereof at the Fairness Hearing described in this Order and GRANTS the Motion for Preliminary Approval of the Proposed ERISA Class Action Settlement [Doc. No. 3152].

**IT IS HEREBY ORDERED THAT:**

1. The terms of the Settlement Agreement are preliminarily approved, as set forth below, subject to further consideration at a Fairness Hearing, which shall be held before this court on **March 11, 2019 at 9:30 a.m. (E.D.T.)**. The Settlement Agreement [Doc. No. 3154-1] is incorporated by reference in this Order.

2. The Settlement is sufficient to warrant notice thereof, as set forth below, and a full hearing.

3. The court has received and reviewed the proposed form of Notice of Settlement to Class Members ("Notice") attached as Exhibit 5 and Exhibit 6 to the Settlement Agreement. The proposed Notices in the forms submitted to the court are hereby approved. The court further finds that notice by mail is the most effective form of notice under the circumstances of this case, where the class members have been identified by Defendant's records. As provided in the Settlement Agreement, the Settlement Administrator shall mail (or cause to be mailed) the Notice to the class members. Notice shall be mailed on or before **November 5, 2018**. If any Notice is returned as undeliverable, the Settlement

Administrator shall re-mail the Notice to the forwarding address, if any, provided on the face of the returned mail. If the returned mail does not reflect a forwarding address, then neither class counsel nor any other party shall have any further obligation to re-mail the Notice.

    4. Any newly-identified class member who wishes to be excluded from and not be bound by the Settlement Agreement must complete and mail a request for exclusion to the Settlement Administrator **postmarked no later than 30 days after transmittal of the Notice** with certain exceptions identified in the parties' Settlement Agreement. For a class member's opt-out to be valid, it must be timely (as judged by the postmarked deadline set forth above) and (a) state the Class Member's full name, address, and telephone number; (b) state unequivocally that the Class Member wishes to opt out from the settlement; and (c) include the Class Member's signature (an attorney's signature is not sufficient). Any class member who does not submit a timely opt-out, and otherwise comply with all requirements for requesting exclusion from the classes as set forth above and in the Notice, shall be bound by the Settlement Agreement, including the Release provisions therein, and any Final Approval and Final Approval Order entered in the action. Further, any class member who is a successful opt-out will be deemed to have waived any rights or benefits under the settlement, and will have no standing to object to the settlement or to seek to intervene in the Action. On or before the date

of the Fairness Hearing, class counsel and defendant's counsel shall create and jointly file with the court a comprehensive list of opt-outs.

5. Any class member who does not opt out and who wishes to object to the settlement, in whole or in part, must file a written objection with the court by **January 4, 2019** (60 days after mailing of the Settlement Notices) (*see* Sec VI(A)(2) of the Settlement Agreement), and send copies to Plaintiffs' Co-Lead Counsel and FedEx Ground. To be considered valid, each objection must be timely (as judged by the filing deadline set forth above) and (a) provide the Class Member's full name, address, signature, and telephone number; (b) explain the basis of the objection; and (c) state whether the objector intends to appear at the Fairness Hearing. Any class member who does not submit a timely and valid objection in complete accordance with this Order, the Notice of Settlement, and the Settlement Agreement shall not be treated as having filed a valid objection to the settlement. Objections that are untimely and/or otherwise invalid will not be considered by this Court. In the event any objections are filed, Plaintiffs and/or Defendant may file any response to any objections no later than **7 days prior to the Fairness Hearing**.

6. A Fairness Hearing shall be held before the undersigned on **March 11, 2019 at 9:30 a.m. (E.D.T.)**, in the United States District Court for the Northern District of Indiana, 204 S. Main Street, South Bend, Indiana, to determine, among other things; (a) whether the proposed settlement should be approved as fair,

reasonable, and adequate; (b) whether the action should be dismissed with prejudice pursuant to the terms of the Settlement Agreement; (c) whether class members should be bound by the release set forth in the Stipulation and Settlement Agreement; (d) the amount of attorneys' fees and costs to be awarded to class counsel; and (e) the amount to be awarded to Plaintiffs for their services as class representatives, if any. This hearing may be postponed, adjourned, or continued by order of the court without further written notice to the class. Class Members who have filed timely objections to the Settlement and timely notice to the Court of their intent to appear at the Fairness Hearing may appear either in person or telephonically (see Section VI(A)3 of the Settlement Agreement).

7. Rust Consulting, Inc. is designated and approved as the Settlement Administrator to perform the functions identified in Sections II and V of the Settlement Agreement, pursuant to Section 468B of the Internal Revenue Code and Treas. Reg. § 1.468B-1, 26 CFR § 1.468B-1, *et seq.*, and this Order.

8. Applications for awards of attorneys' fees, costs, settlement administration expenses, and any service awards, shall be filed with the court on or before **October 20, 2018**. Objections shall be filed on or before **January 4, 2019.** The plaintiffs' Motion for Final Approval and Memoranda in support of the settlement shall be filed on or before **April 4, 2019.**

9. All other events contemplated by the Settlement Agreement to occur after this Order and before Final Approval shall be governed by the Settlement Agreement, to the extent not inconsistent with this order.

10. The parties are authorized to establish the means necessary to administer the Settlement.

11. All proceedings in the action, other than those that may be necessary to carry out the terms and conditions of the Settlement Agreement or related and/or incidental responsibilities are stayed and suspended until further order of this Court.

12. If Final Approval of the settlement is not granted, or if the settlement is terminated for any reason, the settlement and all proceedings had in connection shall be without prejudice to the *status quo ante* rights of the parties to the action, and all orders issued pursuant to the settlement shall be vacated. In such an event, the settlement and all negotiations concerning it shall not be used or referred to in this action for any purpose whatsoever. This Order shall be of no force or effect if Final Approval does not occur for any reason, and nothing in this Order shall be construed or used as an admission, concession, or declaration by or against defendant, of any fault, wrongdoing, breach, or liability.  Nor shall this Order be construed by or against Plaintiffs or the Class Members that their claims lack merit or that the relief requested in this action is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses it may have.

13. Neither the settlement nor the Settlement Agreement constitutes an admission, concession, or indication by the parties of the validity of any claims or defenses in the action; or of any wrongdoing, liability, or violation of law by the defendant, who vigorously deny all of the claims and allegations raised in the action.

14. The court reserves the right to approve the settlement with such modifications, if any, as may be agreed to by class counsel and defendant's counsel without future notice to the class members.

15. Between the date of the entry of this Order and the date of the Fairness Hearing, the classes and each class member shall be enjoined from initiating any claim, suit or proceeding against the defendant with respect to any claim that is the subject of the settlement.

SO ORDERED.

ENTERED:   September 5, 2018


    /s/ Robert L. Miller, Jr.
Judge, United States District Court